Case number 15-5107, Arthur S. West, Appellant v. Loretta E. Lynch, et al. Mr. Zients, for the amicus curiae. Mr. Riley, for Federal Defendant Appellees. And Mr. Evan, for Washington State Defendant Appellees. Mr. Zients, good morning. Thank you, Your Honor. Good morning, and may it please the Court. As amicus curiae before this Court, appointed by this Court, I'm happy to address whatever aspects of this case the Court is most interested in. Unless the Court has a different preference, I will plan to begin with the District Court's personal jurisdiction holding. The District Court in this case held... Why don't you begin with standing, and in particular, redressability? Sure, Your Honor. So, to begin then with standing. What the District Court held was that Mr. West had failed to allege standing at each step of the way, injury in fact, causation, redressability. I know Your Honor asked about redressability. If I can just say a word just to frame the issue in terms of... I think this is not quite how Mr. West argued it below, but I think it is helpful to take the standing issue as being in two parts. As I've suggested in my brief, there's the claim about his injury as a user of medical marijuana that I think has its own chain of causation and redressability. And then I think he's alleging a somewhat distinct injury with distinct legal claims concerning his exposure to unwanted marijuana smoke and the effects of that in the environment from recreational marijuana. So I'll begin with that. In terms of causation... I just want to be clear. Sure. With respect to those two injuries, it's the substantive injury that comes from people, with respect to the latter, the substantive injury that he alleges comes from people smoking in, I guess, a park near his house. Yes, Your Honor, the complaint contains a number of allegations about sort of broad societal injuries from the increased use of marijuana. What I think is the strongest claim of a concrete injury for Article III purposes is that Mr. West alleges a few things, but principally he alleges he, for example, frequents Sylvester Park in his neighborhood in the city of Olympia, Washington. Since Initiative 502 has been implemented, there has been an increase in marijuana use and smoke in that park. He has a number of objections to that, including aesthetic. How does he know the people smoking marijuana in the park aren't smoking medical marijuana? Your Honor, I'm not sure he knows that. What he has alleged is that since the implementation of Initiative 502, he has witnessed an increase in the use of marijuana in that park. But he doesn't know the causes of that, right? He has no idea whether those are recreational. By the way, it's illegal to smoke pot in a park, in marijuana in the park, right? Under state law? Correct, Your Honor. It's a civil infraction. That's for about a $50 penalty. All right. Well, go ahead. He doesn't raise any procedural injuries. It's just those two substantive ones you identified. Your Honor, Mr. West has a NEPA claim. He alleges that essentially with the coal memorandum and the related activities taken by the federal government, Mr. West alleges that the federal government should have undergone a NEPA environmental review before making that decision. So he alleges that there was a procedural injury in that sense. He still needs to – so, for example, in order to succeed on that, he still needs to allege an injury, in fact, that could be addressed. But he does not need to allege that the NEPA review would actually result in a different decision. But, Judge Taylor, to take your question, I think you're correct that Mr. West can't know for sure whether the smoke that Mr. West is exposed to in the park is recreational marijuana. What he can say is, from his experience spending time in that park, that there was an event in time, the implementation of Initiative 502, and Mr. West objects to various things about the decision allowing that to go into effect. And what Mr. West alleges is that as someone who frequents that park, he has witnessed the conditions of that park. I get it, but I just don't understand how the actions of the Attorney General could have caused something that occurred several years earlier, namely the passage of 502. Sure. Which goes to Judge Henderson's question. Exactly. And so that's the causation and redressability question. And what Mr. West has alleged in this case is that, in fact, these are not independent events. What the Supreme Court has held, what this Court has held in various cases, is that when the harm is independently caused by a third party, then there's no causation, there's no redressability. But when there is a relationship, there's a causal relationship between the third party's actions and the defendant in the case, then causation can be established. And so what Mr. West's position is essentially, yes, the Washington voters in the November 2012 election approved Initiative 502. What Mr. West says is that without – that was sort of turning the first key, if you can analogize it, to the nuclear codes. You need two keys to make this happen. One, the state needed to decide to do this to legalize recreational marijuana. That alone wasn't going to do it, Mr. West alleges, because the state wouldn't have done it without some sort of go-ahead from the federal government. And what he has pointed to is very – The ballot initiative was passed several years earlier, correct, before the go-ahead from the government? Correct, Your Honor. Did the state have to do – once 502 was passed, that was it for the legal situation in Washington, right? In other words, that decriminalized marijuana. It didn't require any further actions by the legislature, did it? Your Honor, I do think that there was some legislative action. There was – I think there were instructions in the initiative to set up a regulatory regime. I'm not sure that anything specific needed to happen, but – In fact, I think there was even a timeframe for having a body of regulations issued. And so the state was in the process of preparing those regulations and was getting near the deadline before the Cole Memo even came out, correct? I think that's correct, Your Honor. And what I would say is that – They were already implementing 502. The state was already implementing 502 without the Cole Memo. Your Honor, they were certainly taking steps to prepare for the implementation of initiative 502. I think what Mr. West has pointed to is various statements by Washington state officials. For example, when the Cole Memorandum came out, the Attorney General released a statement. This is page 40 of the appendix. Today we received confirmation that Washington's voter-approved marijuana law will be implemented. So there – and it goes on to thank federal officials for, quote, allowing the initiative to be implemented. So I think one – My understanding was the initiative itself required them to promulgate regulations and set a deadline, and they were already doing that. Whatever the statement might be, they were already doing that and legally obligated to do that with or without the Cole Memorandum. Your Honor, I think as a matter of state law, that's certainly the case. You could imagine if, for example, the Attorney General in 2013 had not issued the Cole Memorandum, the Attorney General could have done a couple of other things. The Attorney General could have gone to court and said, I'm asking the court to enjoin this law from being implemented as preempted. I think the federal government's position has been that was an available option to them. Even without that step, I think a question could have been raised for the state government if the state government was faced with – without the sort of permission slip that they were seeking from federal officials. The state government would have been in a position where they might have said, absent – despite the requirements of state law that we're supposed to enact these regulations and proceed with the implementation of Initiative 502, there's the Supremacy Clause, there's federal law saying that marijuana is illegal, the federal government has told us that we can't go ahead with that. And the state, I suppose, might have decided to fight that out. But they also – I think the suggestion from some of these statements is that they regarded that permission is – from the federal government is important. And that, I think, is the heart of the causal allegation in Mr. West's case. This idea that at the motion-to-dismiss stage, with all inferences taken in his favor, that when you look at these statements by state officials of the state of Washington, that you can reach the conclusion that is at least plausible at the motion-to-dismiss stage that there was this causal relationship. And then what about redressability? If the toll memo disappeared tomorrow, that wouldn't change enforcement priorities. And that wouldn't change the fact that there's 502 and regulatory scheme and now a Cannabis Act and the whole structure in Washington. So how would just having the toll memo itself disappear change anything? Your Honor, I think this overlaps with my answer on causation. And the reason for that is, as this Court has said various times, redressability is sort of the other side of the coin, the flip side of causation. So if you accept – if you agree that what Mr. West has alleged in this case, that he has plausibly alleged causation in the sense that without the toll memo – that the state officials essentially viewed the toll memorandum as that other key, that necessary ingredient to allow them to go forward with continuing to implement Initiative 502, I think you would then reach the same conclusion under redressability that if – But not if they've talked to the folks at the Justice Department. They know their history of prosecution. And the fact that the toll memo is gone doesn't mean enforcement priorities have changed. And so it seems rather speculative to assume that just because a toll memo were to go from the recycle bin that there would be any change in enforcement priorities by the Justice Department, particularly given that marijuana possession charges have historically been prosecuted by states, not the federal government anyhow, even pre-toll memo. Your Honor, I think what Mr. West has alleged in his view of the coal memorandum is that it goes somewhat beyond – talks about enforcement priorities, but it does go beyond that. It talks about strong regulatory structures. It has a sort of implicit threat, actually an explicit threat. We may go after your regulatory system. The coal memorandum was accompanied by a letter by Attorney General Holder. But they could do that even if they didn't have a coal memo. Nothing needs to change in the heads of federal prosecutors just because a coal memo goes away, doesn't it? Your Honor, I think – That's correct, Your Honor. I think the way to think about it is that Mr. West is challenging the coal memorandum as well as the Attorney General's letter and the broader determination essentially not to take any steps against the state of Washington's enforcement implementation of Initiative 502. And what Mr. West is alleging is that without – I think he's not just saying enjoy the coal memorandum. He's saying make the federal government undertake an environmental analysis under NEPA, make the federal government essentially consider whether – I suppose one option would be to continue to follow the coal memorandum. One option would be simply withdraw the coal memorandum and revert to the state of affairs before. Another would be go into federal court, seek preemption of this law or to express a broader opposition. But as to those latter two steps, there's no authority on the court to order the prosecutorial judgments on that. Your Honor, I don't think you could order the Justice Department to go into court. What the court would be ordering if Mr. West survived not just at the standing stage but at the merits and you decided that there was a NEPA claim here and that it was violated, is for the Justice Department to view this category of decisions relating to whether to permit the state of Washington to proceed with medical marijuana implementation, view that as a major federal action, and go back and do the environmental analysis that Mr. West – But there still has to be – even if you're right about that, even if we could order that, there still has to be – before we could, there still has to be causation and regressibility, right? There still has to be – we would still have to understand that eventually validating or ordering a NEPA study for the coal report would have consequences in Washington, right? Correct, Your Honor. And that's where, at least on this half of the way I'm considering sort of the one chain of causation, and after I answer this question, maybe I can briefly address the other. I think what Mr. – Well, you have the same problem with the other one, right? In other words, with the increased taxation and regulation. Isn't it exactly the same problem? I mean, in fact, it's sort of a mirror image because with respect to 502, that occurred – your causation problem there is that it occurred before the complaint was filed, and with respect to the increased regulation and taxation, your problem there – or not your problem, your client's – I'm not even your client. Mr. West's problem is that the legislation imposing the new taxes occurred after the complaint was filed. Correct? That is correct, Your Honor. So I've got – that's the problem, right? Sure, Your Honor. And so there are a few points here. I think if the court – on the sort of medical marijuana chain of causation there, if the issue there is that a lot of this, the new marijuana law, happened after the complaint, what I think it would be fair to do is, particularly as a pro se plaintiff, as other courts have held, I don't think that this court has specifically reached this question, but certainly a number of other courts. Yeah, but for us to send it back, it still has to be – I mean, it seems to me that if we think that no matter what he alleges about that, that there's no causation or addressability, then amending would be futile. There would be no reason to add that, to let him do that, right? Sure, that's exactly right, Your Honor. So I was just addressing that if the issue that the court sees in this is a sort of timing issue, just the fact that there was this injury from the increased regulation and it just happened later, if the problem is just you can't take that into account because it wasn't in the complaint, I think you could remand for an amendment, or you could simply view Mr. West's further pleadings on that as a pro se plaintiff, treat them as sort of 15D supplemental pleadings. Right. Of course, if you think that even with those in the case, then the case shouldn't go forward, that's a different matter. Your Honor, I see that my time is up. I'm happy to continue addressing that. All right, we'll give you a few minutes in response. Thank you. Thank you. Mr. Riley. Good morning, and may it please the Court. Nicholas Riley for the federal LEs. It sounds like from the Court's questioning, like I said, a good understanding of the issues in this case. The only point that I would just want to add was the one that Judge Millett alluded to in one of her questions, which is that the kinds of relief that plaintiff is seeking here fundamentally are the kinds of decisions that the federal LEs would have to make are committed to the Attorney General's discretion by law. Again, taking an enforcement action, whether that's a prosecution under the CSA or initiating some sort of suit, preemption-type lawsuit, these are, again, decisions that are committed to the Attorney General's discretion by law, which was one of the grounds that the district court dismissed on. I'm happy to address any specific questions that the Court might have about standing, about the other grounds for dismissal. The Court has none. Is the prosecutorial discretion, do you see that as jurisdictional? Yes. I think that's a question of what this Court could order. But it's simply a presumption, isn't it? That's true. It is a presumption. As the district court noted, though, in this particular case, the plaintiff has not offered anything to rebut that presumption. The district court invited a plaintiff to raise some sort of abdication-type of argument. But what I'm asking is I'm not sure it's jurisdictional if it's just a presumption because then it could be overcome, and then we would have jurisdiction. As you just said, Your Honor. Yeah. And I think that's a fair way to read it. I think in this particular case, though, even treating it as a presumption, the plaintiff has not offered anything to rebut that presumption. So I think it's still a valid grounds for dismissal here. All right. But how could we get to that until we first resolve your standing argument? Well, I mean, again, I think that – Isn't that right? For us to get to that issue, don't we have to conclude the plaintiff has standing? No, absolutely. I'm sorry. I didn't mean to imply that the court could skip over standing in any way. We think that he lacks standing. We just wanted to note that because much of the discussion of amicus focused on standing, I just wanted to add the extra point there. Okay. What is the U.S. government's position on how personal jurisdiction analysis applies in an ex parte young case? Do we look at the defendant as a state for purposes of a personal jurisdiction statute or as an individual for purposes of a personal jurisdiction statute? I think that's a question that we haven't taken a position on here. I think, again, the state is prepared to answer questions about personal jurisdiction since that was the grounds on which the claims against the state were dismissed. Personal jurisdiction was not an issue with respect to the claims that plaintiff raised against the federal government. Would the same problem not come up in business cases? It may, and I'm not prepared to address it right now. Again, this case was decided, at least the claims against the federal government, on both standing grounds and failure to state a claim. Why isn't the differential threat between a $50 civil fine for smoking in public imposed by the state and a potential felony conviction by the federal government relevant to causal analysis? Isn't it fair to assume that speeding will get someone else? I have a friend who wants to speed, and if that friend would face a $50 civil speeding ticket, that's one judgment. And if the friend thought she could face more than a year in prison, do you think that would have a differential deterrent effect on individuals? I think it may. Isn't that a pretty good suggestion, inference, that it would, at least for this stage of pleadings? Sure, I think that's a fair point. I don't think it makes a difference, the outcome here. Do you really suggest, then, that having the Cole Memo might have a real impact on whether people are willing to smoke in public? No, because, again, the Cole Memo, I think, as Your Honor and some of the other questions indicated, the Cole Memo could be invalidated tomorrow, and Initiative 502 would still be on the books. The Cole Memo doesn't do anything to preclude prosecution of marijuana use under the CSA. In fact, the Cole Memo expressly states the opposite, which is that it shouldn't be construed as preventing any U.S. attorney office from commencing enforcement proceedings under the CSA. So, again, I don't think that if there is any differential deterrent effect from federal prosecution versus the current state prohibition, I don't think that affects the problems with causation or addressability that we've identified here. And for redress, does it have to stop the smoking in the park, or would it be enough if it simply reduced the amount of smoking in the park, because some folks are worried about felony convictions? Again, I'm not sure that that ultimately makes a difference here. Again, with respect to the Cole Memo, any differential deterrent effect, again, between federal prosecution and the state violation, I don't think is attributable or traceable to the issuance of the Cole Memo, because, again, the Cole Memo doesn't actually preclude any prosecutions under federal law. The Cole Memo simply is providing guidance to federal prosecutors as to what factors they should consider in deciding whether or not to commence prosecution under the Controlled Substances Act for marijuana-related violations. I had a question that listed among the priorities that the federal government wanted to concentrate on was drugged driving, and I don't see how unless an ATF agent or an FBI agent or a DEA agent can make a traffic stop, how that is a federal priority. Do you happen to know, we were discussing with my clerk and I, whether federal officers can see somebody going by 100 miles an hour effect an arrest? I don't know the answer to that, Your Honor, but I do think that... It would be on park lands in Washington, federal lands in the state of Washington, correct, or here in D.C., right? They enforce drug driving on the GW Parkway, the Baltimore-Washington Parkway. It's on federal lands. I didn't understand. Okay, well, I don't think it's limited to that. Right, I didn't understand your question to be limited to federal property. Again, I don't know the exact answer to that, but we're talking here, again, about federal enforcement priorities, and I think it's fair to read those as, you know, what kinds of cases, what kinds of effects these prosecutors should have in mind when they're deciding whether or not to prosecute. So it wouldn't necessarily be guidance for the arrest decision and whether or not a federal agent is going to arrest a particular individual for drunk driving or driving while intoxicated. It would be, you know, the kinds of cases that would preclude those kinds of consequences. Okay. Any more questions? All right, thank you. All right, thank you very much. Mr. Even, you've come from the other Washington quite a ways, so glad to have you. We refer to this as the other Washington. Okay. Thank you, Your Honor. My name is Jeffrey Even. I'm a Deputy Solicitor General from the State of Washington here on behalf of Governor Inslee and Ms. Foster. This case doesn't belong in this court. And the state defendants do not belong here. Mr. West's lack of standing provides a straightforward mechanism for resolving this case as to all defendants. But in addition, this court lacks personal jurisdiction over Governor Inslee and Ms. Foster. Now, I would propose to offer a few comments here regarding some issues relating to standing that have already come up in the discussion and then proceed to personal jurisdiction. The first point that I would point out, Mr. Zions cites the court to page 40 of the joint appendix. I would suggest flipping back to the page right before it, to page 39, in which there's a description, a statement issued right after the meeting that occurred between the Governor and the Attorney General, in which that meeting is described as the state officials expressing their intention to the federal officials to proceed with the enforcement, the execution of Initiative 502. So there never was a question of needing to come and get federal permission in the form of a memo in order to proceed. The state officials have consistently recognized that they're obligated to implement state law. And then related to that, I think a point that came up in questioning about Initiative 502 being self-executing, yes, Initiative 502 is itself a statute. In Washington, the state constitution can't be amended by an initiative, so the initiative itself is a statute. At the time this case was filed, Initiative 502 was the law for about a year before the Cole memo was issued. And then after that, there was subsequent legislation, most notably in 2015, that merged the medical and the recreational together. But that came after this case was filed. So I think clarifying those points. When you talk there about we could continue to move forward, that was simply because you'd been assured that the federal government wasn't going to come in and bring that preemption lawsuit or do something to stop you? Is that the context for getting these statements? Before the Cole memo was issued, the state didn't know that. We were, frankly, in uncharted territory. But nevertheless, because we have a state law that directs the executive branch to implement this new regulatory program, we were proceeding with that. And as I think you correctly described in a question, Your Honor, at the time the Cole memo was issued, the state, what's now called the Liquor and Cannabis Board, was well along in the process of adopting administrative rules to govern that licensing and regulatory system. So that already was proceeding. Am I correct that Colorado passed a law around the same time and they were having these same conversations with the Attorney General? Yes. And so the Cole memo lived with respect to Colorado, regardless of whatever impact it had on Washington? Well, yes. And, in fact, those discussions were going on simultaneously. The Colorado initiative passed the same year as Initiative 502 in Washington. So, yes, Colorado was having the same conversations. We got to know people in Colorado a whole lot better than we used to. Yes, that was all going on at the time. I have a question that is going to take you far beyond the record, so you don't have to answer it if you don't want to. But based on what I read in the papers, it looks like the new Attorney General may have a very different view about this than the current administration. And I'm wondering, so what happens if, after January 20th, the Cole memorandum is withdrawn? Will that have any effect in Washington? Well, that would not, Your Honor, directly change either federal law or state law. And so state officials would, at that point, still be obligated to follow state law. So isn't that the simple answer to the standing issue right there? I think it is. I think that's, frankly, the clearest answer for this entire case. Now, to make just a few remarks on the personal jurisdiction question. That's also true with respect to taxation and regulation, both aspects of his claimed injury, right? Yes. The taxes would remain in place, as would the regulations? Yes, that's correct. The federal law that says it won't interfere with medical marijuana, is that a continuing law or is it one that's enacted annually as a rider? Yes, it's a rider in the budget. So, yes, the law currently is that the Department of Justice is precluded from using their appropriated funds to challenge state medical marijuana laws. But that is a budget rider. It could change. All right. But it's been, I forget what year it started. It was quite some time. It's been reenacted every year. It's been through at least two federal budgets. Maybe it's more than that. I'm not sure. So, yes. Very briefly, I think, with regard to personal jurisdiction, I would reiterate the point we've made. I frankly think standing is a very straightforward basis for resolving this case, in which instance the court would not need to reach personal jurisdiction. But under the government contacts principle, the general rule, of course, is that contacts in the district, simply for the purpose of communicating with federal officials, does not provide personal jurisdiction within the district. Before we get to that, can you answer my question about how one understands an Ex Parte Young suit? Yes. I'm sorry. I did intend to do that. Thank you. Ex Parte Young addresses subject matter jurisdiction rather than personal jurisdiction. So it addresses, it provides a vehicle for providing a federal forum to resolve certain disputes. But it doesn't address the question of where that federal forum would be. Had Mr. West brought this case in, say, the Western District of Washington or the Eastern District of Washington, we would not have a personal jurisdiction argument. And Ex Parte Young would apply. And conceivably, at least, we could have subject matter jurisdiction as well. That's why the state has not raised an Eleventh Amendment argument here. Now, as to whether we should be looking at this as personal capacity, individual capacity, or official, all of the contacts that the governor had, and, by the way, there's no contacts really concretely alleged regarding the other defendant, Ms. Foster, all of those contacts simply relate to communications with the federal government, and they're all in the governor's official capacity. If he was simply Jay coming to Washington, he would not be having this conversation with the United States Attorney General. That's true, of course, of Eleventh Amendment, or of Ex Parte Young matters in general. But for that reason, I think we should view this as an official capacity case. And so then he's the state, and we don't even get to transacting business then, or the government contacts assumption, because the state would not be looking at that? Because the state's not a person. That's right. All right. I'm done. Additionally, I think – I'm sorry. I see that my time has more than expired. All right. Do you have a question, Doctor? Thank you very much. Okay. Thank you. Let's see. How about Mr. Zions? Does he have any time left? All right. Why don't you take two minutes? Thank you, Your Honor. If I could just briefly respond, I think, to the last point on personal jurisdiction and Judge Millett's question about what kind of action this is. I think the way – I think official capacity, individual capacity, to be frank, it's been a little unclear how – what the terminology has been. I think the best way to answer that question is to look at the Supreme Court's decision in Will versus Michigan Department of State Police. And what the court in Will says is that in action against an official, even in its official capacity for official conduct, when you're seeking to enjoin prospectively that conduct, citing Ex Parte Young, then the action is not viewed as one against the state. It is viewed against a, quote-unquote, person for purposes of Section 1983. So what I would suggest is that in that situation, if you were a person for one statute for Section 1983, that it's the exact same statutory question, statutory language, for purposes of the D.C. long-arm statute, that you are a person, the state official when you're seeking to enjoin prospectively that conduct, is a person under the D.C. long-arm statute. I think that's consistent with how this court analyzed the issue in the Ferrara case, where the court did not sort of jump to what Mr. Even just said of the defendant is not a person, the defendant is the state, not within the long-arm statute, and that's the end of it right there. The court in Ferrara had a pretty extensive, sort of went through a long analysis of an official capacity defendant's contacts with the district for purposes of transacting any business, for purposes of due process minimum contacts, and then only later getting to this idea of, well, maybe there's an alternative argument about jurisdiction as a suit against the state. So I think that that's how I would analyze that issue. Can I just ask you quickly, Chief? Sure. What is your response to the representation that even if the Cole memo were to disappear in the next month, that Washington would proceed apace implementing this law? Your Honor, I suppose we may have a good natural experiment and someone could write a good law review article, and when we see what happens, what I would say is on the face of the pleadings, and we're looking at the allegations that Mr. West has and giving him inferences on his favor, you can look at the materials that he has produced and say the State of Washington viewed this as the other nuclear key, and if it turns in the other direction, if you essentially withdraw the permission slip, then what the State of Washington will do is something else, and it will redress Mr. West's terms.  Mr. Zients. Thank you, Your Honor. You are appointed as a friend of the Court, and we thank you for your very able assistance. Thank you, Your Honor.
judges: Henderson, Tatel, Millett